**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | |
|---|---|
| **The State of KANSAS, et al.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**UNITED STATES OF AMERICA and the**<br>**CENTERS FOR MEDICARE &**<br>**MEDICAID SERVICES,**<br><br>    **Defendants.** | **CIVIL ACTION NO. 1:24-cv-00150-**<br>**DMT-CRH** |

**<u>PROPOSED INTERVENORS' REPLY BRIEF IN SUPPORT OF THEIR</u>**
**<u>MOTION TO INTERVENE AS DEFENDANTS</u>**

The Government claims to "adequately represent" DACA recipients' urgent interest in purchasing healthcare on the ACA marketplaces.  ECF No. 76 ("Gov't Opp."), at 1.  But instead of joining Proposed Intervenors' position that they are *entitled* to such access by statute, the Government attempts a middle position that leaves it discretion to redefine "lawful presence" at any time and thus to exclude DACA recipients from the ACA marketplaces again, as it did for the past decade.  As a result—and likely due to institutional considerations that DACA recipients do not share—the Government's opposition to a preliminary injunction omits several of the strongest arguments supporting DACA recipients' statutory right to ACA marketplace access.

To avoid these arguments, Plaintiffs eagerly join the Government in opposing intervention.  But the Government's failure to advance key arguments undercuts any notion that it adequately represents DACA recipients' interests.  And Plaintiffs' other argument—that the intervention motion is untimely—is baseless, since it was filed just six weeks after the Complaint and 25 days before any hearing or ruling in the case.  The other elements of intervention as of right are not disputed.  And even if Proposed Intervenors lacked a right to intervene, the Court should still grant permissive intervention so that it may consider all legal arguments before deciding the weighty questions of statutory interpretation that will define so many DACA recipients' access to healthcare.[1]

## ARGUMENT

### I.    The Government Does Not Adequately Represent Proposed Intervenors' Interests

The Government's failure to make key arguments supporting its statutory authority undercuts its claim to adequately represent DACA recipients.  It ignores that Plaintiffs' attempt to limit

---

[1] As Proposed Intervenors explained in a supplement to their Motion to Intervene, ECF No. 62 at ii n.1, if intervention is denied, the Court should accept Proposed Intervenors' opposition to the motion for a preliminary injunction as an *amicus curiae* brief under North Dakota Civil Rule 7.1(G).  The Government has stated that it has "no objection" to this relief.  Gov't Opp. 6 n.2.

marketplace access to "qualified aliens" would render the ACA's references to eligibility for "lawfully present" individuals superfluous and conflict with the Individual Mandate that *all* such individuals purchase health insurance. ECF No. 62-1 at 12-13. It also ignores related statutes expressly treating categories of noncitizens similar to deferred action recipients as both "qualified aliens" and "lawfully present." *Id*. at 14-15. And though the Government notes that prior regulations have long treated deferred action recipients as lawfully present, it refuses to acknowledge that the canons of statutory interpretation make those regulations dispositive as to whether DACA recipients are entitled to purchase healthcare on the ACA marketplaces. *Id*. at 15. These differences are not "merely theoretical," Gov't Opp. 4—the parties' arguments are, in fact, divergent.

Nor can these differences be dismissed as mere "litigation strategy." Gov't Opp. 5. The Government has an institutional interest in maximizing its discretion in this area, so it avoids arguments that would *compel* (rather than merely allow) it to extend marketplace access to deferred action recipients. Its brief opposing a preliminary injunction, for example, takes pains to avoid saying that CMS *must* let DACA recipients purchase health insurance on the ACA marketplace, and it actively opposes Proposed Intervenors' "criticism of the prior rule," which it tries to exclude from this case. *Id*. & n.1.[2] These are not different tactics; they are different arguments that reflect divergent interests.[3]

---

[2] The Government is also wrong that these criticisms are not properly before this Court. While courts cannot uphold a rule based on "fact or . . . policy" grounds not considered by an agency, they are "not prevent[ed] . . . from resolving purely legal questions that are not entrusted to the agency," *Rincon v. Garland*, 70 F.4th 1080, 1084 (8th Cir. 2023), such as "interpretation of a federal statute," *N.C. Comm'n of Indian Affs. v. DOL*, 725 F.2d 238, 240 (4th Cir. 1984). Accordingly, the Court can hold that the prior rule was unlawful—and uphold the Final Rule on that basis—even if CMS did not rely on that basis in the Final Rule. *See* Gov't Opp. 5 n.1.

[3] The Government's failure to address the Individual Mandate's implications may similarly reflect an institutional interest in avoiding litigation on that provision, given its complicated political and judicial history.

Whatever the motive, the fact that the Government is "unable or unwilling to pursue vigorously all available arguments" is "sufficient reason to doubt the adequacy of [its] representation of [Proposed Intervenors'] interest[s]." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011).  Failing to make "obvious arguments" in defense of the Final Rule "justif[ies] a finding that [its] representation . . . was inadequate." *Dagget v. Comm'n on Gov't Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999).  Indeed, that failure is precisely the type of "nonfeasance" the Government concedes can overcome any presumption of adequate representation to which the Government may be entitled.  Gov't Opp. 3 (quoting *N.D. ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015)).  Given the serious consequences of delaying DACA recipients' access to healthcare, their right to purchase health insurance without delay should not be jeopardized simply because the Government chose not to or neglected to present all available arguments in defense of the Final Rule.[4]

## II.     The Motion to Intervene Was Timely Filed

Plaintiffs' timeliness objection, ECF No. 77 ("Pls. Opp."), at 2-5, fares no better.  *All* three of the timeliness factors cited by Plaintiffs, *id.* at 2-4, confirm that this motion is timely.

<u>Stage of the Proceeding</u>:  Proposed Intervenors sought intervention in this action's earliest stages before any issue was decided or fully briefed.  ECF No. 49 at 12-13.  They agreed to abide

---

[4] None of the Government's or Plaintiffs' cases involve a similar failure to make critical arguments without any strategic justification.  No specific divergence in arguments was mentioned in *FTC v. Johnson*, 800 F.3d 448 (8th Cir. 2015), or any of Plaintiffs' cases (ECF No. 77 ("Pls. Opp."), at 6-7).  *SEC v. LBRY, Inc.* rejected speculation that a party would not make a particular argument in future briefing because that party stated that it did "inten[d] to present" a "variation" on the argument in question "when . . . full briefing" occurred.  26 F.4th 96, 99 (1st Cir. 2022).  And in *Guenther v. BP Retirement Accumulation Plan*, the proposed intervenor sought to press a theory that an existing party had "specifically alleged" at one point and that not yet "necessarily been abandoned."  50 F. 4th 536, 544-55 (5th Cir. 2022).  Here, by contrast, the Government has already filed the only brief permitted to it in opposing a preliminary injunction, so the opportunity to oppose that relief on that basis has passed.

by the same briefing schedule as the Government and filed their proposed opposition to a preliminary injunction concurrently with the Government on September 25, 2024. Plaintiffs had a full two weeks to respond to Proposed Intervenors' brief—they simply chose not to. Plaintiffs' assertion that "[p]reliminary injunctions necessarily move at a fast pace," Pls. Opp. 4, is irrelevant. It is the States' gamesmanship, not Proposed Intervenors that would slow the pace of briefing.

Plaintiffs fail to cite a single case where intervention at such an early stage was denied as untimely. Instead, they cite cases involving extraordinary circumstances where intervention was sought *after* briefing and decision on the merits. *Arkansas Electric Energy Consumers v. Middle South Energy, Inc.*, for example, involved an injunction adjudicated in just 14 days. 772 F.2d 401, 402 (8th Cir. 1985). Intervention was sought 12 days into that process, *after* "[a] hearing had been held," "a temporary restraining order issued," and the trial court had stated how it was likely to rule. *Id.* at 403. The proposed intervenors filed their proposed merits brief *after* the deadline for briefs, the day before the final merits hearing. *Id.* Even then, the court stated only that it was "not convinced" that intervention was timely, but it need not decide because any error was "harmless." *Id*. at 404. Similarly, in *SEIU Local 1 v. Husted*, intervention was sought *one* business day before a preliminary injunction hearing and more than two weeks after "completion of briefing." 515 F. App'x 539, 541-43 (6th Cir. 2013). And the court emphasized it was applying a stricter timeliness standard because the motion sought only permissive intervention, not intervention as of right. *Id*.

Prejudice: Plaintiffs claim intervention would "significantly and unfairly prejudice the[m]," but they fail to explain how. Pls. Opp. 4. The motion to intervene is now fully briefed, four days before the October 15 preliminary injunction hearing. Both motions can be argued together at that hearing and decided well before the Final Rule takes effect on November 1.

Plaintiffs thus focus their "prejudice" arguments on Proposed Intervenors' concurrently

filed motion to transfer venue.  But the timing of that motion did not prejudice Plaintiffs.  Even absent the motion, Plaintiffs' choice of venue is at issue because both the Government and Proposed Intervenors have opposed a preliminary injunction on that basis.  ECF No. 61 at 20; ECF No. 62-1 at 7-8.  If anything, the transfer motion gave Plaintiffs *additional* time to address the issue because it previewed Proposed Intervenors' position 5 days before responses to a preliminary injunction motion were filed.  Plaintiffs had 14 days to respond to the motion.  D.N.D. Civ. L.R. 7.1(B); *see also* ECF No. 75 at 2.  And with 18 states' attorneys signing their briefs, there is no question that Plaintiffs could have found someone to prepare a timely response.  Instead, they chose not to do so for tactical reasons even though their request to stay briefing, ECF No. 59, was never granted.  "[A]ny prejudice to plaintiff[s] is" thus "of [their] own making."  *Cabrera v. IndyMac Bank F.S.B*, 2020 WL 2083971, at *5 (C.D. Cal. Feb. 5, 2020).

Even if the transfer motion's timing were somehow prejudicial, that would at most support deferring that motion until after the Court decides the motion to intervene.  Intervention cannot be denied as untimely where "any potential prejudice" from delay "can be avoided" without injuring any party.  *Hill Phoenix, Inc. v. Sys. Refrigeration, Inc.*, 117 F. Supp. 2d 508, 515 (E.D. Va. 2000); *see also Westra Constr., Inc. v. U.S. Fid. & Guar. Co.*, 546 F. Supp. 2d 194, 201 (M.D. Pa. 2008).

Reason for Delay:  Plaintiffs have not shown that Proposed Intervenors "delay[ed]" their motion to intervene by filing it "six weeks" after the Complaint.  Pls. Opp. 2-3.  But even if six weeks could be considered "delay," *id.*, any delay was excusable.

Proposed Intervenors are not businesses with limitless resources.  They are private individuals and a non-profit organization (CASA) with a limited budget who are relying on pro bono counsel.  CASA submitted comments in the rulemaking, Pls. Opp. 3 n.2, but the other Proposed Individual Intervenors did not, and no Proposed Intervenor had any knowledge that Plaintiffs

would challenge the Final Rule—let alone seek a nationwide injunction—until at least August 8, when the Complaint was filed.  From that point, it took weeks of diligent work to connect CASA with pro bono counsel, clear conflicts, assess the litigation, identify individual participants and declarants, prepare their declarations, and research and draft the necessary briefs.  By contrast, it took Plaintiffs a full *3 months* after the Final Rule just to file their Complaint—then another 20 days for several Plaintiffs to decide whether to join the already existing suit, ECF No. 27, and 22 days to file a preliminary injunction motion, ECF No. 35—even though Plaintiffs likewise participated in the rulemaking and submitted comments addressing many of the issues in their Complaint, ECF No. 62-1 at 17.  Requiring CASA and the Proposed Individual Intervenors to anticipate and retain counsel in advance to defend against a lawsuit that might never have been filed—or to respond to that lawsuit in less than half the time it took Plaintiffs to prepare it—would be entirely unreasonable, particularly given that Proposed Intervenors *still* managed to seek intervention at this early stage without altering the existing briefing schedule.

Given these obstacles, there was nothing "tactical" about Proposed Intervenors' purported delay.  Pls. Opp. 3.  To the contrary, it is Plaintiffs who strategically compressed the timeline for this litigation by waiting until two months before the Final Rule's effective date to seek a preliminary injunction and then tried to avoid accountability for their strategic decision to file in an improper forum by opting not even to respond to Proposed Intervenors' motion to transfer.  This Court should not permit Plaintiffs' delay tactics to deprive DACA recipients of a voice in defending their right to purchase health insurance under the ACA.

## III.    The Court Should Use Its Discretion to Allow Permissive Intervention

Even if the Court were to reject intervention as of right, it should permit intervention under Rule 24(b).  Contrary to Plaintiffs' assertions, Proposed Intervenors offer more than "repetition" of the Government's arguments.  Pls. Opp. 7.  They offer multiple "argument[s] that [the

Government has] not already made," *id.*, and allowing presentation of those arguments will help ensure this Court correctly resolves the important statutory interpretation questions presented by this case.

Permissive intervention would be appropriate even if the Court concluded that the Government adequately represented DACA recipients' interests. The Government claims adequacy of representation is a "relevant factor" for permissive intervention, Gov't Opp. 7, but the case it cites for that proposition confirms that, at best, it is "only a minor variable," *S.D. ex rel. Barnett v. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). Accordingly, "intervention may still be appropriate" despite "existing adequate representation" where it "will 'assist in the just and equitable adjudication of . . . the issues.'" *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014). Indeed, far from "preclud[ing] permissive intervention," "overlapping interests . . . 'support'" it by confirming that the parties and intervenors "'shar[e] a common question of law.'" *King v. Christie*, 981 F. Supp. 2d 296, 309-10 (D.N.J. 2013). Permissive intervention is thus appropriate where, as here, the intervenors "will aid a more robust disposition of the case" because they are "pressing . . . somewhat different arguments" than the Government. *Cellco P'ship & N.Y. SMSA Ltd. P'ship v. Cnty. of Monmouth*, 2024 WL 989824, at *4-5 (D.N.J. Mar. 7, 2024), or they offer a "helpful, alternative viewpoint from the vantage" of those who would be affected by the law, *King*, 981 F. Supp. 2d at 310. Particularly given Plaintiffs' and the Government's failure to show prejudice from intervention, *see supra* at pp. 3-6, there is no reason not to permit intervention.

## CONCLUSION

The Court should grant Proposed Intervenors' Motion to Intervene.

Date: October 11, 2024

Respectfully submitted,

_/s/ Matthew S. Rozen_

Nicholas Espiritu (_pro hac vice_)
Gabrielle Lessard (_pro hac vice_)
Tanya Broder (_pro hac vice_)
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd.
Suite 108 – 62
Los Angeles, CA 90010
espiritu@nilc.org
Lessard@nilc.org
broder@nilc.org
Telephone: 213.639.3900
Facsimile: 213.639.3911

Joanna E. Cuevas Ingram (_pro hac vice_)
Hilda Bonilla (_pro hac vice_)
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, DC 20043
cuevasingram@nilc.org
bonilla@nilc.org
Telephone: 202.216.0261
Facsimile: 202.216.0266

Matthew S. Rozen (VA Bar No. 85871)
John Matthew Butler (D.C. Bar No.
1721350)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.,
Washington, D.C. 20036
mrozen@gibsondunn.com
mbutler@gibsondunn.com
Telephone: 202.955.8500
Facsimile: 202.467.0539

Betty X. Yang (TX Bar No. 24088690)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, Texas 75201
byang@gibsondunn.com
Telephone: 214.698.3100
Facsimile: 214.571.2900

_Attorneys for Proposed Intervenors_

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, I filed the foregoing document using the Court's

CM/ECF system, which will send a notice of the filing to counsel for all parties.


/s/  *Matthew S. Rozen*
       Matthew S. Rozen