UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **STATE OF KANSAS,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **UNITED STATES OF AMERICA,** *et al.*, <br><br> *Defendants*. | Case No. 24-cv-150-DMT-CRH |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EXPEDITED MOTION FOR RECONSIDERATION OF THE ORDER FOR SUPPLEMENTAL INFORMATION**

North Dakota's request that Defendants be required to disclose DACA recipients' names and addresses—so the State can identify how many of those individuals have driver's licenses and how many of them, or their dependents "born in the United States," Tr. 50:21-22, are enrolled in North Dakota K-12 public schools—was substantively and procedurally improper. *See* Mot. for Reconsideration, ECF No. 90 (Mot.). Plaintiffs have failed to show otherwise, and indeed, their opposition confirms that disclosure of this private information is unnecessary. *See* Opp'n, ECF No. 93. The Court should reconsider and withdraw its Order for Supplemental Information. *See* ECF No. 87.

*First*, Plaintiffs make no effort to defend their request for the DACA recipients' names and addresses with respect to any need to determine whether the DACA recipients or their U.S.-born dependents are in North Dakota K-12 public schools. They do not challenge the Lotspeich Declaration, *see* ECF No. 90-1, which confirms Plaintiffs' expectation that none of the DACA recipients themselves are currently eligible to attend North Dakota K-12 public school, *see* Tr. at 50:19. They make no attempt to rebut Defendants' showing that, as a matter of law, Plaintiffs cannot establish standing based on DACA recipients' dependents attending public school. *See* Mot. at 8-9. And they offer nothing to justify the invasion of privacy that

1

they are contemplating. *See id.* Indeed, their opposition contains no mention of public school at all. If nothing else, given this silence, the order for supplemental information should be revised to preclude North Dakota from using DACA recipients' names and addresses to identify children attending North Dakota K-12 public schools.

*Second*, Plaintiffs' submission confirms that they do not require the DACA recipients' names and addresses to establish standing based on a driver's license theory. Defendants have argued from the beginning that this theory fails at Step One because Plaintiffs cannot show that the Final Rule will cause a DACA recipient who would otherwise imminently leave the State to instead stay, *see* Defs.' Opp'n at 11-13, ECF No. 61, and at Step Two because North Dakota has not shown that it suffers a financial loss when it issues a driver's license, *see id.* at 14 (citing *Texas v. DHS*, --- F. Supp. 3d --- 2024 WL 1021068, at *17 (S.D. Tex. Mar. 8, 2024) (*CHNV*)). The names and addresses could help, if at all, only with Step Two, and even then, North Dakota could use them to show only that one or more DACA recipients in the State has a driver's license. However, that is not disputed here. *See* Mot. at 7; Defs.' Opp'n at 14. There is accordingly no need to intrude on the privacy interests of DACA recipients. For this reason alone, the Court should reconsider its prior order requiring disclosure.

Because Defendants do not dispute that at least one DACA recipient has obtained a North Dakota driver's license, the Court need not assess—for purposes of North Dakota's discovery request—the extent of any loss related to driver's licenses, but if it does, the Court should conclude that the State has failed to make the requisite showing. North Dakota has now submitted a declaration claiming that, despite charging fees for the issuance of driver's licenses and identification cards, it does so at a loss of $3.97 and $10.97, respectively, for each transaction. *See* Decl. of Robin Rehborg ¶ 5, ECF No. 93-1. But the declaration does not substantiate that counter-intuitive assertion. The State offers no details explaining how it arrived at these "approximate net costs," *id.*—not even back-of-the-envelope calculations—in stark contrast to Judge Tipton's findings that Texas issues driver's licenses far more cheaply

2

and, in fact, at a profit. *See CHNV*, 2024 WL 1021068, at *10.[1] Nor has it attempted to reconcile its assertions with the many times that the North Dakota Department of Transportation has listed driver's license fees as a source of revenue—not a net cost. *See, e.g.*, N.D. Office of the State Auditor, *N.D. Dep't of Transp. Audit Report* at 14 (2024), *available at* https://perma.cc/AFR2-VMVD (attributing $4.3 million and $3.9 million in revenue to driver's licenses in FY2023 and FY2022, respectively); North Dakota, *Budget Supporting Schedules* at 237 (2021-2023), https://perma.cc/Y4AP-N7WP (listing $9.4 million in revenue from driver's licenses); N.D. Dep't of Transp., *Funding NDDOT* at 1 (2021), https://perma.cc/5DQG-VZDZ (showing "License, Fees, Permits" account for 3.2% of $2.4 billion in funding and "Driver License" accounts for just 1.3% of $2.4 billion in expenditures). Given these obvious deficiencies, the State's assertions of a net cost per license should not be uncritically accepted. But even if the Court treated the declaration as sufficient for present purposes, the State's business decision to issue licenses at a loss would constitute a self-inflicted injury. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976). To avoid injury, North Dakota simply needs to charge a fee that covers its costs.

In any event, even if disclosure of the DACA recipients' names and addresses were necessary to allow North Dakota to satisfy Step Two, there still would be no basis to order discovery here because North Dakota cannot satisfy Step one by showing that invalidating the Final Rule would somehow cause DACA recipients living in North Dakota to depart before they renewed their licenses. The names and addresses cannot assist with that, and Plaintiffs have never contended otherwise. Therefore, because requiring disclosure of the

---

[1] Despite Texas's prior claims that it lost $130.89 on each license it issued to a DAPA recipient, *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015), evidence ultimately showed that it, in fact, costs Texas less than $3 to produce a license and that, after charging its $33 fee, the State turned a profit on each one, *CHNV*, 2024 WL 1021068, at *10. The Rehborg declaration does not provide sufficient data to conclude that it costs NDDOT—which the State claims is "ranked #1 in the country for … cost effectiveness"—five times more to produce a license. N.D. Dep't of Transp., *Funding NDDOT* at 2 (2021), https://perma.cc/5DQG-VZDZ.

names and addresses would not help resolving the jurisdictional inquiry, the Court should withdraw its order and protect the non-parties' personally identifiable information.

*Third*, Plaintiffs' procedural objections to the motion are meritless. Rule 54(b) gives this Court authority to "revise[] at any time before the entry of [final] judgment" "any [interlocutory] order or other decision." *See* Mot. at 4. The "interest in judicial economy" may mean that courts exercise their discretion to do so sparingly, such as when an "earlier decision misunderstood a party" or they "made a decision outside the adversarial issues." *Roeman v. United States*, 343 F.R.D. 619, 623-24 (D.S.D. 2023). But Plaintiffs are incorrect to suggest that the law-of-the-case doctrine precludes the Court from reconsidering its order absent a showing that it was "clearly erroneous and would work a manifest injustice." Opp'n at 2 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). That doctrine applies only "to final orders, not interlocutory o[nes]." *Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010). The standards for obtaining entry of partial judgment, *see* Opp'n at 1 (citing *Hardie v. Cotter & Co.*, 819, F.2d 181, 182 (8th Cir. 1987)), and relief from final judgment under Rule 60(b), *see id.* at 3 (citing *U.S. v. Tracts 10 & 11 of Lakeview Heights*, 51 F.3d 117, 120 (8th Cir. 1995)), similarly have no bearing here, as Plaintiffs themselves recognize, *see id.* at 2 (noting that the standard for reconsideration is "less exacting" (quoting *Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004)). Rather, the Court maintains discretion to consider Defendants' arguments and revisit its order.

Here, the circumstances make it particularly appropriate to reassess whether the private information of non-parties should be disclosed. This is not a situation where the Court issued an order on a dispositive motion after full briefing and a party is seeking another bite at the apple. *Cf.* Opp'n at 2-3 (citing *Doctor John's, Inc. v. City of Sioux City*, 456 F. Supp. 1074, 1075-76 (N.D. Iowa 2006) (summary judgment); *Roeman*, 343 F.R.D. at 624 (motion to dismiss)). North Dakota did not file a motion for jurisdictional discovery, request discovery in its reply brief after its standing was challenged, or even suggest it was necessary in its initial oral presentation; it instead waited until its rebuttal when Defendants had little chance to

4

respond. Plaintiffs claim (at 6) that their request was made in response to Defendants' oral arguments, but they notably omit citation to the transcript—perhaps because the record reflects that Defendants' oral arguments tracked their opposition brief, *compare* Tr. at 33:7-25 *with* Defs.' Opp'n at 13-14.

***

For these reasons and those in the motion for reconsideration, the Court should reconsider and withdraw its order for supplemental information. At a minimum, it should revise the order to preclude North Dakota from using the names and addresses to identify DACA recipients' dependents who may be in North Dakota K-12 public schools.

Dated: October 26, 2024                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           ERIC B. BECKENHAUER
                                           Assistant Branch Director
                                           Federal Programs Branch

                                           */s/ Christopher A. Eiswerth*
                                           Christopher A. Eiswerth (D.C. Bar No. 1029490)
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, DC 20005
                                           Tel: (202) 305-0568
                                           Email: christopher.a.eiswerth@usdoj.gov

                                           *Counsel for Defendants*