UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **STATE OF KANSAS,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **UNITED STATES OF AMERICA,** *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-00150-DMT-CRH |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Shortly after 2:00 p.m. Central Time on November 1, 2024, Plaintiffs moved for a temporary restraining order, asking the Court to enjoin Defendants "from causing irreparable harm to the States by acting upon the Final Rule" while it considers Plaintiffs' pending motion for preliminary relief—in particular, "the venue issue." *See* ECF No. 105 at 2, 7 (TRO Mot.). Their TRO motion comes nearly six months after the Centers for Medicare & Medicaid Services published the Final Rule, *see* 89 Fed. Reg. 39,392 (May 8, 2024); nearly three months after they initiated this suit, *see* Compl., ECF No. 1; more than two months after they filed their motion for a stay of the final rule and preliminary injunction, *see* ECF No. 35; and more than two weeks after the Court heard oral argument on Plaintiffs' motion for preliminary relief, *see* ECF No. 89. Most importantly, Plaintiffs' TRO motion comes more than 14 hours after the Final Rule became effective, *see* 89 Fed. Reg. at 39,392, and granting it would not preserve but upend the status quo. The motion is untimely, lacks merit, and should be denied.

### LEGAL STANDARD

A temporary restraining order "is an emergency remedy which should only be issued in exceptional circumstances." *Zidon v. Pickrell*, 33 F. Supp. 2d 1093, 1095 (D.N.D. 2004). "The burden of establishing the necessity of a temporary restraining order is on the movant."

1

*Lime Rock Res. Operating Co. v. McPherson*, 2020 WL 8268882, at *2 (D.N.D. Dec. 10, 2020). As with a motion for a stay under 5 U.S.C. § 705 or a preliminary injunction, *see Running Horse, LLC v. Rodenbough Trucking & Excavating, Inc.*, 2017 WL 1390691, at *3 (D.N.D. Jan. 11, 2017) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)), obtaining a temporary restraining order requires the movant to make a "clear showing" "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest," *Marzurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord* Mot. at 3. Here, the last two factors merge because the federal government is the defendant. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

Plaintiffs have not made a "clear showing" as to any of the required factors, and the motion should be denied for multiple, independent reasons.

### I.     Plaintiffs are not likely to succeed on the merits

Plaintiffs are not likely to succeed on their claims because the Court lacks subject-matter jurisdiction, venue is improper, and Plaintiffs have failed to state a valid claim. Defendants have previously set forth their arguments on these points, *see* Opp'n to Mot. to Stay at 9-27, ECF No. 61; Mot. for Reconsideration at 4-9, ECF No. 90; Reply in Support of Reconsideration at 2-4, ECF No. 96, and incorporate them here by reference, as Plaintiffs themselves have done, *see* Mot. at 3-4.

North Dakota's October 31 submission does not establish that it has standing or that venue is proper in this district. Even assuming North Dakota can proceed on an indirect-costs theory of standing that the Supreme Court has rejected, *see United States v. Texas*, 599 U.S. 670, 680 & n.3 (2023); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 392 (2024), the State still has not presented any evidence that the Final Rule will cause any DACA recipient who otherwise would have imminently left North Dakota to instead remain, *see California v. Texas*, 593 U.S. 659, 675 (2021); *Texas v. Mayorkas*, 2024 WL 4355197, at *4 (S.D. Tex. Sept. 30,

2

2024) (*Public Charge*); *Texas v. DHS*, --- F. Supp. 3d ---, 2024 WL 1021068, at *15-16 (S.D. Tex. Mar. 8, 2024) (*CHNV*); *Arizona v. Garland*, --- F. Supp. 3d ---, 2024 WL 1645417, at *11 (W.D. La. Apr. 16, 2024). DACA recipients have been in the United States since at least 2007 and have never before been able to enroll in health-insurance plans through an ACA exchange. North Dakota's insistence that some DACA recipients will leave the country if the Final Rule is blocked—and they continue to be ineligible to enroll through an exchange—defies common sense. And North Dakota's reliance on statistical probabilities (at 5 (citing Camarota Decl. ¶¶ 5-6, 9)) is improper as a matter of law. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009); *Missouri v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022). The same is true for general statements of congressional policy, *see* TRO Mot. at 5 (citing 8 U.S.C. § 1601(5)), whose putative violation is not the sort of specific discrete injury that could support Article III standing—and in any event, Congress "may not simply enact an injury into existence," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).

Without evidence that the Final Rule will imminently cause DACA recipients who would otherwise leave the State to refrain from doing so, North Dakota cannot establish standing even if the State incurs costs due to the DACA recipients currently residing within its borders. *See, e.g.*, *Public Charge*, 2024 WL 4355197, at *6 ("Texas has failed to meet its burden of proving an injury in fact and thus lacks standing" because it "has not provided evidence that a single *additional* person was, or would be, granted admission into the country, much less Texas, under the 2022 Rule as compared to the 2019 Rule."); *CHNV*, 2024 WL 1021068, at *16-17 (similar). Because North Dakota does not have standing, and no other plaintiff is resident in North Dakota, *see* 28 U.S.C. § 1391(b)(3), venue is improper in this district. *See, e.g.*, *Missouri v. Dep't of Educ.*, 2024 WL 4374124, at *4 (S.D. Ga. Oct. 2, 2024) (concluding venue was improper after dismissing Georgia for lack of standing); *Kansas v. Garland*, 2024 WL 2384611, at *1 (E.D. Ark. May 23, 2024) (similar); *Dayton Area Chamber of Com. v. Becerra*, 2024 WL 3741510, at *8 (S.D. Ohio Aug. 8, 2024) (similar). Defendants timely objected to venue, and the issue is briefed. Plaintiffs have not refuted Defendants'

objections, and therefore, they cannot obtain preliminary relief and proceed with their case. *See, e.g.*, *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 907 (8th Cir. 1987) (reversing district court's grant of preliminary injunction where venue was improper); 28 U.S.C. § 1406(a).

Contrary to Plaintiffs' suggestion (at 3), they cannot circumvent Defendants' jurisdictional and venue objections by belatedly requesting a temporary restraining order. They have not cited any Supreme Court or Eighth Circuit authority suggesting it is appropriate to grant such relief without deciding timely raised jurisdictional and venue objections, particularly when those objections have been fully briefed by the parties. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (timely raised venue objections "should [be given] a top priority in the handling of [a case]"). In fact, the Court may enter equitable relief only if Plaintiffs make a "clear showing" that they are entitled to such relief based on the four *Dataphase* factors. *See* Fed. R. Civ. P. 65(b); *Running Horse*, 2017 WL 1390691, at *3. *Missouri v. Department of Education* is not to the contrary. In that case, the States sought relief immediately after filing suit, and the district court granted the States temporary relief—before the government had filed an opposition brief—based on its assessment of the traditional factors. *Missouri v. Dep't of Educ.*, 2024 WL 4069224, at *2 (S.D. Ga. Sept. 5, 2024). However, once the issues were briefed, the district court concluded that Georgia (like North Dakota here) lacked standing and transferred the case to an appropriate venue. *See Missouri*, 2024 WL 4374124, at *4. In this case, the parties' arguments are before the Court, and as with a preliminary injunction, Plaintiffs cannot succeed where jurisdiction and venue are lacking.

## II. Plaintiffs have not demonstrated that they will suffer irreparable harm

Plaintiffs have also not established that, absent the requested temporary restraining order, they will suffer irreparable harm between now and when the Court rules on their pending motion for preliminary relief. Indeed, their delay in bringing this motion was unreasonable and alone justifies denying the motion. *See, e.g.*, *Ng v. Bd. of Regents*, 64 F.4th 992, 997 (8th Cir. 2023). Regardless, they have not carried their burden to show irreparable harm justifying extraordinary relief.

First, Plaintiffs disregard (at 4) that the Final Rule has already taken effect. *See* 89 Fed Reg. at 39,392. DACA recipients are now eligible to enroll in health insurance on the exchanges, and the federal and State exchanges are accepting applications from DACA recipients. *See, e.g.*, Ky. Health Ben. Exch., *Immigrant Population Health Coverage* (last accessed Nov. 1, 2024), https://perma.cc/6L27-95M4. Claims of past harm based on the cost of updating the eligibility engines in advance of Open Enrollment, *see* TRO Mot. at 4 (citing 89 Fed. Reg. at 39,424, 39,426), cannot support forward-looking injunctive relief, particularly now that the Open Enrollment period has begun, *see, e.g.*, *Murthy v. Missouri*, 144 S. Ct. 1972, 1987 (2024).

Second, the asserted harms of SBE States are not sufficient. Kentucky, Idaho, and Virginia have still not submitted evidence that their charged assessments or user fees do not cover the administrative costs associated with enrolling additional individuals in health insurance, *see Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015); *Henderson v. Stalder*, 287 F.3d 374, 379-80 (5th Cir. 2002), or provided an explanation for how their failure to comply with 42 U.S.C. § 18031(d)(5)(A)—the States' obligation to ensure their exchanges are self-sufficient—is not a self-inflicted injury, *see Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976). And Plaintiffs' claim (at 4) that the States face "costs when they are forced to distribute ACA exchange subsidies" is simply inaccurate because, under the Affordable Care Act's plain terms, "the Secretary of the Treasury makes advance payments … to the issuers of the qualified health plans"—not the States. 42 U.S.C. § 18082(a)(3); *accord id.* § 18082(c)(2), (3) (same for premium tax credits and cost-sharing reductions).

Third, North Dakota's alleged costs also do not constitute irreparable harm. North Dakota claims (at 5) that it has incurred a cost of less than $600 in issuing driver's licenses to DACA recipients over some unspecified amount of time. Putting aside that it has not explained how it costs North Dakota five times more to issue a license than Texas, *see* Reply at 3 n.1, ECF No. 96, or why that loss is not self-inflicted, *Pennsylvania*, 426 U.S. at 664, again, past costs cannot establish standing to obtain prospective injunctive relief, *Murthy*, 144 S. Ct.

at 1987. North Dakota has not submitted any evidence that it will imminently incur further costs, let alone in the period between now and when the Court decides its motion for a preliminary injunction or stay—the only period relevant for considering North Dakota's request for a temporary restraining order. Even if it could, North Dakota has not cited any case supporting the proposition that a State's expenditure of a few hundred dollars is "harm [that] is certain and great and of such imminence that there is a clear and present need" for equitable relief. *Morehouse Enter., LLC v. ATF*, 78 F.4th 1011, 1016-17 (8th Cir. 2023).

The State's assertions (at 5) regarding its supposed costs to educate, transport, or feed public-school students, which may include some unknown number of DACA recipients' dependents—a question the State is "still assessing," Pls.' Resp. to Order for Supp. Info. ¶ 22, ECF No. 103—are also not enough to establish irreparable harm. North Dakota's arguments on this score require even more speculative steps than their theory based on driver's licenses; DACA recipients' children born in the United States are U.S. citizens, entitled to remain in this country even if a DACA-recipient parent were to depart, and North Dakota has nothing to establish any likelihood that any such dependents would depart if a DACA-recipient parent continued to be barred from accessing Affordable Care Act exchanges. North Dakota claims that it spends approximately $14,350 per pupil, but that number merely represents the total costs of staff, classroom materials and equipment, utilities, and maintenance divided by the total number of students. *See* Decl. of Adam Tescher ¶ 4 (citing N.D. Dep't of Pub. Instr., *School Finance Facts* at 4 (2024), https://perma.cc/RU8V-FFZ6).[1] North Dakota has not submitted any evidence showing that its expenditures would be different even if a miniscule number of students departed the State. And as with the other alleged costs, North Dakota has not shown that those expenditures are likely to increase between now and when the Court

---

[1] The document on which Tescher relies also shows revenue, including money from the federal government, exceeding these supposed costs. *See also* N.D. Dep't of Pub. Instr., *Financial Transparency*, https://perma.cc/QAM7-99CY (showing revenue per pupil exceeding costs per pupil by nearly $3,000).

decides the motion for preliminary relief. Without such evidence, the State cannot carry its burden of establishing irreparable harm.

### III. The requested temporary restraining order is contrary to the public interest

Since CMS published the Final Rule, it has been clear that when the Open Enrollment period started on November 1, DACA recipients would be eligible to enroll in health insurance on the exchanges. *See* 89 Fed. Reg. at 39,392. The federal government, States operating their own exchanges (including Kentucky, Idaho, and Virginia), insurance companies, and other organizations have worked diligently to prepare, and individuals across the country have started signing up for insurance. Plaintiffs, on the other hand, have repeatedly delayed. They waited months to file this suit. *See* Compl., ECF No.1. They waited nearly another month to amend their complaint, file their motion for preliminary relief, and serve Defendants. *See* ECF Nos. 27, 35, 42. After jointly proposing a briefing schedule, *see* ECF No. 42, they waited until their rebuttal at oral argument to request jurisdictional discovery, *see* Tr. at 50:17-52:11, and when the Court granted it, they did not object to the timeline, *see* ECF No. 87. And now, they have waited until after Open Enrollment has already begun to request yet another form of equitable relief. *See* TRO Mot. Plaintiffs' own delay should not be rewarded by a favorable exercise of equitable relief, particularly when it would upend the status quo and inflict harm on the public.

If the Court "restrain[s] Defendants from implementing the Final Rule," *see* TRO Mot. at 7, the federal government would have to make changes to the federally-facilitated exchange's eligibility engines, as will a number of States, including Kentucky, Idaho, and Virginia. Plaintiffs would essentially be requiring the Court to order them to re-incur the costs of which they complain and, if the Court ultimately denies the pending motion for a stay and preliminary injunction, incur them yet again. Other States may also have to revise their eligibility engines. Regardless of whether any State must expend additional funds to make such revisions, Plaintiffs' requested relief would disrupt operations of the exchanges and require additional efforts to address the confusion caused by Plaintiffs' request. While the

equities for the parties and the other States have always weighed in favor of denying preliminary relief, that is even more clearly the case now that the Final Rule has taken effect and Open Enrollment has begun.

Further, the interests of the DACA recipients and the other States strongly outweigh any minimal costs to Plaintiffs in potentially renewing driver's licenses or providing school lunch to children. As noted in Defendants' opposition, *see* ECF No. 61 at 27-29, allowing DACA recipients to enroll in health insurance prevents absenteeism in the workplace, increases tax revenue, saves expenditures on emergency services, and leads to better health outcomes for enrollees and their children, including U.S. citizens. Plaintiffs have not shown that their small, speculative expenditures merit more protection than those interests.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' prior briefs, *see* Opp'n to Mot. to Stay at 9-27, ECF No. 61; Mot. for Reconsideration at 4-9, ECF No. 90; Reply in Support of Reconsideration at 2-4, ECF No. 96, the motion for a temporary restraining order should be denied.

Dated: November 1, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director
Federal Programs Branch

*/s/ Christopher A. Eiswerth*
Christopher A. Eiswerth (D.C. Bar No. 1029490)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0568
Email: christopher.a.eiswerth@usdoj.gov

*Counsel for Defendants*