UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **STATE OF KANSAS,** *et al.,* <br><br> *Plaintiffs,* <br><br> v. <br><br> **UNITED STATES OF AMERICA,** *et al.,* <br><br> *Defendants.* | Case No. 24-cv-150-DMT-CRH |

## DECLARATION OF JEFFREY GRANT

I, Jeffrey Grant, pursuant to 28 U. S. C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby declare as follows:

1. I currently serve as the Deputy Director for Operations in the Center for Consumer Information and Insurance Oversight (CCIIO) at the Centers for Medicare & Medicaid Services (CMS). In that role, I oversee operations for the Federally-facilitated Exchanges (FFEs) and State-based Exchanges on the Federal Platform (SBE-FPs) (referred to collectively as the FFE). This declaration will address the operations of the FFE and CMS's implementation of the preliminary injunction. This declaration will not address how the three Plaintiff-States will revise their exchanges' eligibility criteria to align with the Court's interpretation of "lawfully present."

2. I enlisted in the US Navy in 1982, received an honorable discharge from active duty in 1987, and ultimately served for a total of 22 years in the Naval Reserve. After

discharge from active duty, I obtained a BA in History from the University of Michigan and a Master of Public Administration from the George Washington University. I have over 30 years of experience as a manager of major health programs in the federal sector, leading the implementation of Affordable Care Act, Medicare Advantage, and Medicare Prescription Drug Benefit payment policies, operations, and systems.

3. The FFE is a centralized, cloud-based federal platform that manages all data and information related to applications for and enrollments in qualified health plans (QHPs) through the FFE. It serves as the Affordable Care Act marketplace for individuals in 31 States. During the most recently completed Open Enrollment Period for plan year 2024, from November 2023 through January 2024, more than 16.4 million individuals utilized the FFE to apply for and enroll in health insurance coverage offered by more than 400 health insurance plan issuers. The FFE is a highly complex system maintained by a team of more than 525 federal employees and 1500 technical contractors.

4. I am aware of, and familiar with, the Final Rule issued by CMS, entitled "Clarifying the Eligibility of Deferred Action for Childhood Arrivals (DACA) Recipients and Certain Other Noncitizens for a Qualified Health Plan through an Exchange, Advance Payments of the Premium Tax Credit, Cost-Sharing Reductions, and a Basic Health Program." 89 Fed. Reg. 39,392 (May 8, 2024) (the "CMS DACA Final Rule"). The CMS DACA Final Rule, among other things, removed the DACA exception from the definition of "lawfully present" at 45 C. F. R. § 152.2, allowing certain eligible DACA recipients and other noncitizens (collectively, "DACA recipients") to enroll in health insurance on the Exchanges.

5. On December 9, 2024, the United States District Court for North Dakota issued a preliminary injunction in *Kansas v. United States*, No. 24-cv-150-DMT-CRH (D.N.D.), enjoining CMS from enforcing the Final Rule against the 19 Plaintiff-States, 16 of which are served by the FFE. On December 11, 2024, the U.S. Department of Justice filed a notice of appeal.

6. The FFE determines whether a consumer is eligible to enroll in a plan and have advance tax credits paid on their behalf to subsidize premium costs or cost-sharing reductions to reduce out-of-pocket costs. Eligibility depends on a variety of demographic factors including age, geographic location, family composition, expected annual income, and citizenship and immigration status. The FFE verifies key eligibility information by calling certain data sources. The FFE utilizes an eligibility engine known as the Standalone Eligibility Service, which automates the eligibility determination process based on information provided by a consumer. States that operate SBE-FPs utilize the Standalone Eligibility Service and other FFE functionalities.

7. Consumers have the option of working with agents and brokers in the application, enrollment, and post-enrollment processes. Most agents and brokers use the Direct Enrollment (DE) or Enhanced Direct Enrollment (EDE) processes, which involve private web sites that are connected to the FFE. EDE partners are third-party organizations that interface with the FFE to streamline the FFE health insurance enrollment process. They integrate their platforms with the FFE, allowing consumers to compare, select, and enroll in qualified health plans directly through their websites, similar to how HealthCare.gov works. There are currently 83 active EDE partners.

8. Each year, the teams supporting the FFE make updates to ensure the FFE is compliant with applicable laws and provides a positive experience for the users of the system, including consumers, brokers, plan issuer partners, states, and other federal agencies. Changes and updates are designed, executed, and repeatedly tested to ensure that all systems across the FFE and key stakeholders, including DE and EDE partners and health insurance issuers, work correctly in combination.

9. In general, we require all our internal teams and external partners to minimize technical changes during the Open Enrollment period due to the risks associated with making changes, particularly those that have a short turnaround time when adequate time to perform full system testing is unavailable. Because the FFE sees a very high volume of traffic during

3

the peak Open Enrollment season that culminates with our mid-December deadline for obtaining January 1 coverage, CMS takes steps to prevent any unintended disruptions that could substantially impact a consumer's ability to enroll by the deadline. Specifically, CMS implements a moratorium on changes to systems and processes during Open Enrollment to avoid the risk that a system change could inadvertently cause disruptions and prevent consumers from enrolling in full-year coverage. This risk is real; such a disruption occurred on December 17-18, 2021, when an incorrectly developed emergency change in response to a security vulnerability produced a significant failure rate in the services that support the FFE's consumer-facing application, which hindered the ability of consumers to submit applications, and ultimately, enroll in coverage. While there are rare exceptions to this change moratorium, CMS generally does not make significant changes with respect to eligibility logic (such as this preliminary injunction would require) during Open Enrollment, and has no history of making such changes after December 1 or before the mid-December deadline. The most recent change in this category was the December 1, 2023 implementation of Medicaid expansion in the state of North Carolina, which was a relatively simple update to a data table, not a change in programming logic.

10. Each year, the highest traffic to FFE systems and supporting processes occurs during the Open Enrollment period, with the peak taking place in the week up to and including the regular cutoff date for consumers to select a plan in order to have coverage beginning on January 1. This cutoff date is currently December 15 (technically, 5 am ET on December 16). Traffic drops off rapidly in the days following the deadline. For reference, here is relevant historical data from the last Open Enrollment period, for 2024 plan year coverage:

| Date | Applicants | Plan selections |
|---|---|---|
| *12/9/23* | 149,801 | 130,996 |
| *12/10/23* | 147,956 | 124,591 |
| *12/11/23* | 408,471 | 371,441 |
| *12/12/23* | 452,273 | 411,092 |
| *12/13/23* | 497,633 | 409,083 |
| *12/14/23* | 628,656 | 608,912 |
| *12/15/23*[1] | 703,214 | 745,044 |
| *12/16/23* | 98,470 | 92,557 |
| *12/17/23* | 25,893 | 19,363 |

11.  To prepare to implement the proposed changes ultimately finalized in the CMS DACA Final Rule, CMS project teams began working with contractors in spring 2023 to review potential solutions to implement the proposed definition of "lawfully present" for coverage that would allow DACA recipients to be eligible for coverage through the Marketplace. Those solutions involved changes to the FFE eligibility system, the Federal Data Services Hub (Hub), and the FFE eligibility applications. CCIIO teams initiated the project in April 2023 and completed work in August 2023, approximately 5 months start to finish.

12.  Later, in fall 2024, during the months leading up to the current Open Enrollment period for 2025 plan year coverage, our teams planned and implemented further changes to update the Standalone Eligibility Service to comply with the CMS DACA Final Rule. In order to implement policy changes made between the proposed rule and the final rule, following months more of planning, CCIIO teams deployed final system updates in October 2024.

---

[1] Plan selections tend to exceed applications on the final day because consumers who saved an application without selecting a plan tend to return on the deadline day and make their plan selection for January 1 coverage.

13. In addition to system changes, CMS prepared a significant amount of supporting materials for stakeholders including 1) new trainings, call scripts, and backend development work for the Marketplace's Eligibility Support Workers, 2) technical assistance to State-based Exchanges, and 3) communications materials to support rollout of the rule, including fact sheets, toolkits, and other stakeholder materials for agents, brokers, navigators, and assisters. Additionally, CMS conducted webinars and distributed educational materials to FFE stakeholders to inform them of the impacts of the CMS DACA Final Rule.

14. The preliminary injunction in this case requires CMS to modify eligibility systems and make website changes to ensure that DACA recipients are deemed ineligible by the FFE systems for purposes of Marketplace coverage in the 16 affected FFE states. CCIIO is planning to deploy these changes on December 22, 2024, the earliest possible release window, to prevent disruption in the peak period of enrollments when system stability is needed to enroll over one million consumers. If this rapid release does cause disruption, such disruption will impact far fewer consumers, and principally consumers enrolling in February 1 coverage, giving until January 15 to correct for the disruption. Further, after the completion of necessary system work on December 22, 2024, CMS will cancel 2025 plan year coverage for any DACA recipients who reside in the Plaintiff-States and were able to enroll through the FFE. Consequently, while some additional DACA recipients from those states may enroll in plan year 2025 coverage between the injunction's issuance and December 22, 2024 despite CMS's notices that the Court's preliminary injunction makes them ineligible, *see infra* ¶ 15, those enrollments will be cancelled so as to never be in effect.

15. The injunction was entered on December 9, 2024. We immediately complied, posting a notice regarding the Court's preliminary injunction on HealthCare.gov, explaining that "DACA[] recipients' ability to enroll in a qualified health plan (QHP) through the Health Insurance Marketplace® has been placed on hold in the 19 states that are involved in the lawsuit." *See* https://www.healthcare.gov/court-decisions/. CMS will also take the following actions, and require EDE partners to do the same:

6

  a. CMS will deploy additional information on HealthCare.gov informing consumers of the new eligibility restrictions in the 16 affected FFE states and Idaho, Kentucky, and Virginia. CMS will also require EDE partners to implement this same type of information on their websites.

  b. CMS will also promulgate guidance to agents, brokers, navigators, and certified assisters on the implementation of the preliminary injunction for the period prior to the full implementation of the system changes. These professionals are responsible for over 75% of enrollments during this Open Enrollment period. These professionals usually interact via telephone with consumers while entering application information on the website, which means that they control the information entered into the application. The guidance will instruct these professionals how to answer the application questions for consumers who fall into the categories covered by the preliminary injunction, which we expect to significantly limit the number of covered individuals who might otherwise attempt to enroll and receive an inappropriate eligibility determination that would require a subsequent reversal.

16. Open Enrollment for 2025 plans began on November 1, 2024. From that date through December 10, 2024, 6,491,299 consumers selected a medical QHP through the FFE platform. That includes including an estimated 2,669 DACA recipients in the 16 plaintiff FFE states, including one individual in North Dakota. Additional DACA recipients may have enrolled through the Idaho, Kentucky, and Virginia State-based Exchanges, but at this point, that data is unavailable to me.

17. In addition to the technological changes described above, the injunction will require that CMS take additional steps to ensure that DACA recipients, who enrolled for coverage before the issuance of the injunction and before the forthcoming changes described above are made to the FFE system, are deemed ineligible for coverage in the 16 Plaintiff-States where the FFE operates. Accordingly, CMS will cancel 2025 enrollment for any such ineligible person. CMS will also develop system functionality to generate and deliver notices

to impacted individuals as required by regulation at 45 CFR § 155.310(g). The process to cancel 2025 plan year coverage for any DACA and impacted non-citizen consumers within those states will commence upon completion of necessary system work on December 22, 2024. Plaintiffs Idaho, Kentucky, and Virginia are responsible for operating their State-based Exchanges and will thus need to implement any necessary changes to their platforms. CCIIO staff who oversee State-based Marketplaces will review how the states have revised their exchanges to account for the Court's order.

18.     Cancellation of an enrollment before coverage becomes effective has the effect of making it as if the enrollment never existed. Therefore, DACA recipients in the 16 FFE Plaintiff-States will have no coverage through the FFE for Plan Year (PY) 2025, and no subsidies will be paid for 2025 coverage. This cancellation timeline and process ensures compliance with the Court's injunction, while mitigating the risk associated with making quick changes to eligibility logic and application instructions during Open Enrollment. In order for these consumers whose coverage was scheduled to begin on January 1 to obtain alternative coverage, they will likely need to enroll in such alternative coverage by December 15. However, because they will not receive notice that their QHP enrollment has been canceled until after December 22, many of these consumers will likely have a gap in coverage.

19.     Federal contractors working on the FFE will spend approximately 1500 hours at a cost of about $200,000 to make the emergency update to the FFE eligibility criteria due to this injunction. In addition, as described in paragraph 9, attempting to implement an emergency update to the FFE of this scope more rapidly than described above would be unprecedented and would present an unacceptable risk of technical errors causing system downtime that could impact all consumers' ability to enroll by the deadline. Even pursuing an emergency update on the timeline described above creates a risk of system downtime that could deter consumers from enrolling in QHPs.

20.     As of mid-day December 10, 2024, there are 876 DACA recipients in the 16 FFE-covered Plaintiff-States who had obtained coverage through the FFE that started

December 1, 2024. This one month of coverage will remain in place since it took effect prior to the Court's ruling but will not be renewed for plan year 2025. These consumers would not be able to purchase alternative coverage for the time period between December 1, 2024, and January 1, 2025, and some of them will have utilized services with the understanding that they have health insurance coverage. If these existing contracts were not honored, payers might deny provider medical claims or reverse the claims if previously approved for payment. Providers would have to bill consumers directly, and these consumers would be charged costs for health care visits during December 2024 that they and the providers legitimately believed the insurance company would cover. The consumer would also lose access to the payers' negotiated rates, meaning the bill can be increased beyond the original total cost of the service when covered by insurance.

21. There will be additional costs associated with informing FFE stakeholders that the injunction currently renders DACA recipients ineligible for coverage. CMS will have to inform DACA recipients, which involves sending a notice to the affected households within the 16 FFE Plaintiff-States explaining why their 2025 enrollment was canceled. The estimated cost to develop the notice is $14,450. The estimated cost of the current count to print and mail the notice is $2,241.96. CMS will also need to communicate with agents and brokers, assisters, SBE-FPs, consumers not impacted by this injunction, and plan issuers. If the injunction were reversed on appeal, some portion of these costs would be reincurred to send out further updates to DACA recipients.

22. The combined effects of the injunction of the CMS DACA Final Rule will create substantial operational complexities, impose costs on the federal government, and potentially limit CCIIO's ability to ensure smooth operation of the Exchanges for all consumers who purchase health insurance through the Exchanges during Open Enrollment.

I declare under penalty of perjury under the law that the foregoing is true and correct.

JEFFREY GRANT -S
Digitally signed by JEFFREY GRANT -S
Date: 2024.12.11 17:57:36 -05'00'

Jeffrey Grant

Dated: December 11, 2024