UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **STATE OF KANSAS,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **UNITED STATES OF AMERICA,** *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-00150-DMT-CRH |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CLARIFICATION**

The Court's December 9 order "enjoin[s]" Defendants "from enforcing the Final Rule against the 19 Plaintiff States." Order at 18, ECF No. 117. It is, as Plaintiffs informed the Eighth Circuit, "geographically limited." Appellees' Opp'n to Emergency Mot. for an Admin. Stay & Stay Pending Appeal at 1-2, No. 24-3521 (8th Cir. Dec. 18, 2024). Plaintiffs' effort to expand that order's scope—three weeks after it issued, after Defendants noticed their appeal, after the parties briefed requests to stay the Court's order here and in the Eighth Circuit on the understanding that it applied only to the 19 Plaintiff States, after the Eighth Circuit expressed the same understanding in denying a stay of the order, and after Defendants implemented this Court's order consistent with that understanding—should be rejected. *See* Mot. for Clarification, ECF No. 134.

*First*, the December 9 order needs no clarification. The Court "enjoined" Defendants "from enforcing the Final Rule against the 19 Plaintiff States." Order at 18; *see* Fed. R. Civ. P. 65(d)(1)(B)-(C) (requiring district courts to state the terms of an injunction "specifically" and "describe in reasonable detail … the act or acts restrained or required"). In addressing Plaintiffs' request for a § 705 stay, the Court recognized that "there is substantial overlap between the motion to stay and preliminary injunction factors," and it granted the motion to stay "for the reasons articulated above," *i.e.*, the same reasons it granted the preliminary

injunction. *Id.* at 17. Nothing in the order suggests that these reasons support broader relief under § 705. Because no ambiguity exists regarding the geographical reach of the December 9 order, the motion should be denied. *See Whatley v. Canadian Pac. Ry. Ltd.*, 2020 WL 13575106, at *2 (D.N.D. Dec. 10, 2020) ("A motion for clarification seeks clarification on 'something ambiguous or vague' [in] the Court's Order.").

*Second*, in the three weeks since the Court's order issued, no one—not Plaintiffs, Defendants, this Court, or the Eighth Circuit—has expressed any confusion regarding the December 9 order's geographical reach. In asking this Court to stay its order, Defendants stated their view that the Court "limited relief to the Plaintiff States," Mot. for Stay at 2, ECF No. 119, and submitted the declaration of Jeffrey Grant, explaining the significant costs to the government and the public of deeming DACA recipients in the 16 Plaintiff States serviced by the Federally-facilitated Exchange (FFE) ineligible for coverage and canceling 2025 coverage for DACA recipients in those particular States, *see* Grant Decl. ¶¶ 14-22, ECF No. 119-1. Plaintiffs took no issue with Defendants' interpretation of the order and, in fact, argued that Defendants' plaintiff-specific efforts outlined in the Grant declaration "show[ed] [Defendants] [we]re already complying with the injunction." Opp'n to Mot. to Stay at 12, ECF No. 127 (citing Grant Decl. ¶ 15). After reviewing the parties' "briefs, the relevant caselaw, and [its] prior Order," the Court declined to modify the December 9 order, including its geographical reach. Order Denying Motion to Stay at 3-4, ECF No. 130.

This pattern repeated in the Eighth Circuit. Defendants appealed the entire December 9 order, *see* ECF Nos. 118, 120, and in their briefing concerning a stay pending appeal, the parties shared the view that this Court's order was "geographically limited," Appellees' Opp'n at 1-2; *accord* Appellants' Emergency Motion for an Admin. Stay & Stay Pending Appeal at 6 n.2, No. 24-2521 (8th Cir. Dec. 13, 2024) ("The stay and preliminary injunction appear coextensive."). The Eighth Circuit had the same interpretation. *See Kansas v. United States*, --- F.4th ---, 2024 WL 5242428, at *1 (8th Cir. Dec. 23, 2024) ("the district court granted a preliminary injunction *and stay*, preventing the agency from enforcing the rule as to the 19

plaintiff-states" (emphasis added)). Plaintiffs' newfound concern that the December 9 order may be ambiguous as to its geographical reach cannot be squared with the record.[1] And they have not provided any justification for setting aside the ordinary rule that "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal" and should not "reexamine or supplement the order being appealed." *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

*Third*, contrary to Plaintiffs' suggestion (at 1), 5 U.S.C. § 705 does not require the Court to issue nationwide relief. Section 705 authorizes courts to "issue all necessary and appropriate process to postpone the effective date" of a rule "to the extent necessary to prevent irreparable injury." "Crafting ['necessary'] and 'appropriate' … relief" to prevent irreparable injury "necessitates the exercise of discretion—the hallmark of traditional equitable practice." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 347 (2024). "When Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Id.* at 345. Congress expected such principles to govern § 705. *See* H.R. Rep. No. 79-1980 at 43 (1946) ("The authority granted is equitable and … relief would normally, if not always, be limited to the parties complainant."); *accord Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974); Order at 17. And Plaintiffs have presented no basis for "jettison[ing] the normal equitable rules." *Starbucks*, 602 U.S. at 347.

In this case, the nationwide relief that Plaintiffs seek conflicts with traditional equitable principles. The Supreme Court has long held that any court-ordered relief "should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs.*" *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (emphasis added); *see also Gill v. Whitford*, 585

---

[1] Plaintiffs emailed Defendants that they intended to file the motion for clarification approximately five minutes before they submitted it to the Court. Had they afforded Defendants a reasonable opportunity to respond, Defendants would have informed Plaintiffs that they shared Plaintiffs' view as of December 18 that the Court's December 9 order was limited in geographical scope. *See* Notice of Compliance, ECF No. 133.

U.S. 48, 68 (2018); *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., joined by Thomas and Alito, J.J., concurring in grant of stay). The Court's December 9 order fully redresses Plaintiffs' purported injuries, and serious separation-of-powers issues would arise if § 705 were interpreted to permit district courts routinely to extend relief to non-parties, *see, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 374 (2024) ("[A] plaintiff's desire to make a drug less available *for others* does not establish standing to sue."); *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[S]tanding is not dispensed in gross," and "plaintiffs must demonstrate standing for each claim that they press … and for each form of relief that they seek."). And it would be particularly problematic here where most States have not only refused to join Plaintiffs' suit, but many have also filed a brief in opposition to Plaintiffs' challenge. *See* State Amicus Br., ECF No. 69.

*Fourth*, expanding the December 9 order at this point would be unjust to Defendants, non-Plaintiff States, and DACA recipients residing in non-Plaintiff States. Within two days of the December 9 order issuing, Defendants sought a stay and informed the Court and Plaintiffs how they interpreted the order. *See* ECF Nos. 119 & 119-1. As detailed above, no one objected to that interpretation, and Plaintiffs affirmatively agreed with it. *See, e.g.*, Appellees' Opp'n at 1-2. Defendants have now implemented a "workable" solution that provides "complete relief" to Plaintiffs by updating eligibility criteria and canceling 2025 insurance coverage for DACA recipients in the 16 FFE Plaintiff States in accordance with the plain terms of the Court's order. *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022); *see* Notice of Compliance at 1-2, ECF No. 133.[2] Expanding the order to require further programmatic updates and coverage cancellations, after Plaintiffs waited weeks to reverse their position, would impose undue costs on Defendants and taxpayers without providing any further relief *to Plaintiffs*.

---

[2] Idaho, Kentucky, and Virginia operate their own exchanges. Under the Affordable Care Act, they have responsibility for updating their exchange eligibility engines and canceling insurance for those now deemed ineligible under the Court's order.

Such an expansion of the order would also require non-party States to incur similar unnecessary costs. As the Amici States explained, granting nationwide relief would "burden them with the costs" of reversing "steps already taken" to implement the Final Rule and "deprive them" of "significant health and economic benefits the Final Rule will bring." State Amicus Br. at 15-16, ECF No. 69. Plaintiffs have not shown that imposing such costs would alleviate any harm to them. Indeed, their claim that nationwide relief is necessary undermines the main assumption underpinning their standing theory: if DACA recipients' residence decisions are primarily driven by the availability of health insurance, leaving the Final Rule in effect in the non-Plaintiff States should, under Plaintiffs' standing theory, result in the savings that they claim the Final Rule denies them because DACA recipients in the Plaintiffs States would then move to non-Plaintiff States. *See id.* at 14. Plaintiffs cannot insist that common sense supports both views. They either lack standing, or nationwide relief is unnecessary.

Finally, expanding the order further would have serious negative consequences for DACA recipients and others in the non-Plaintiff States. The Final Rule established the positive effects of expanding the availability of health insurance to DACA recipients and their U.S.-citizen children. *See* 89 Fed. Reg. 39,392, 39,395-96, 39,402, 39,406 (May 8, 2024); *see generally* Br. of Am. Cancer Soc'y, *et al.*, ECF No. 72. Plaintiffs have never shown otherwise. Some number of DACA recipients in non-Plaintiff States have obtained insurance through the exchanges. *See* Mot. to File as *Amici Curiae* at 5, No. 24-3521 (8th Cir. Dec. 19, 2024). And requiring the cancellation of their 2025 coverage, without providing any further relief to Plaintiffs, would be inappropriate.

*   *   *

The Court's December 9 order puts the Final Rule on pause in the 19 Plaintiffs States. For the foregoing reasons, Plaintiffs' efforts to expand the December 9 order through a so-called motion for clarification should be rejected.

Dated: December 31, 2024                    Respectfully submitted,

                                                                         BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director
Federal Programs Branch

*/s/ Christopher A. Eiswerth*
Christopher A. Eiswerth (D.C. Bar No. 1029490)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0568
Email: christopher.a.eiswerth@usdoj.gov

*Counsel for Defendants*